UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DONALD ALLEN LUCAS,

      Petitioner,

v.

STEVE RIVARD,

      Respondent.

_____/

CASE NO. 2:10-CV-14948
JUDGE DENISE PAGE HOOD
MAGISTRATE JUDGE PAUL J. KOMIVES


## REPORT AND RECOMMENDATION

I.     RECOMMENDATION ................................................................. 2
II.    REPORT ......................................................................... 2
       A.   Procedural History ...................................................... 2
       B.   Factual Background Underlying Petitioner's Conviction .................... 5
       C.   Standard of Review ...................................................... 6
       D.   Evidentiary Claims (Claims I, II, V) .................................... 8
            1.   Improper Admission of Prejudicial Evidence (Claims I-II) ........... 9
                 a. Clearly Established Law ........................................ 9
                 b. Analysis ...................................................... 10
            2.   Constitutionality of MCL § 768.27a (Claim V) ..................... 13
                 a. Clearly Established Law ....................................... 13
                 b. Analysis ...................................................... 14
       E.   Prosecutorial Misconduct (Claims II-III) ............................... 17
            1.   Clearly Established Law ........................................... 17
            2.   Analysis .......................................................... 17
                 a. Voir Dire Comment ............................................. 18
                 b. Appeal to Emotion and Civic Duty ............................. 20
       F.   Ineffective Assistance (Claim IV) ...................................... 24
            1.   Clearly Established Law ........................................... 24
            2.   Analysis .......................................................... 26
            3.   Evidentiary Hearing ............................................... 27
       G.   Sentencing Claims (Claims VI and VII) .................................. 30
            1.   Guidelines Scoring (Claim VI) ..................................... 30
            2.   Blakely Claim (Claim VII) ......................................... 30
       H.   Fourth Amendment ....................................................... 34
            1.   The Claim is Not Cognizable ....................................... 35
            2.   Merits ............................................................ 36
       I.   Sufficiency of the Evidence ............................................ 36
            1.   Clearly Established Law ........................................... 37
            2.   Analysis .......................................................... 38
       J.   Recommendation Regarding Certificate of Appealability .................. 40
            1.   Legal Standard .................................................... 40
            2.   Analysis .......................................................... 42

     K.    *Conclusion* ................................................................ 43

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> ..................................... 43

\*      \*      \*      \*      \*

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Donald Allen Lucas is a state prisoner, currently confined at the St. Louis Correctional Facility in St. Louis, Michigan.

2.    On June 28, 2007, petitioner was convicted of two counts of child sexually abusive activity, MICH. COMP. LAWS § 750.145c(2); possession of child sexually abusive material, MICH. COMP. LAWS § 750.145c(4); and two counts of second degree criminal sexual conduct (CSC-II) with a person under the age of 13, MICH. COMP. LAWS § 750.520c(1)(a), following a jury trial in the Kent County Circuit Court.  On August 8, 2007, he was sentenced as a third habitual offender, MICH. COMP. LAWS § 769.11, to concurrent terms of 217 months' to 40 years' imprisonment on the sexually abusive activity convictions, 5-8 years' imprisonment on the possession conviction, and 217 months' to 40 years' imprisonment on the CSC-II convictions.

3.    Following his conviction and sentence, petitioner filed a motion for new trial and resentencing pursuant to MICH. CT. R. 6.431, claiming that he was denied a fair trial by the introduction of videotapes of petitioner masturbating and the prosecutor's comments on that evidence, and that trial counsel was ineffective for failing to object to this evidence.  Petitioner also raised a challenge to the court's imposition of its sentence on the basis of facts not found by the jury. The trial court denied the motion on December 14, 2007.

4.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

I.      DEFENDANT WAS DENIED A FAIR TRIAL BY THE ADMISSION OF
IRRELEVANT, HIGHLY INFLAMMATORY EVIDENCE (VIDEOTAPES
AND DVDS) WHICH CONTAINED MATERIAL THAT BORE NO
RELATIONSHIP TO THE CHARGES, CONTRARY TO THE
FOURTEENTH AMENDMENT AND THE MICHIGAN CONSTITUTION.

II.     DEFENDANT WAS DENIED A FAIR TRIAL BY THE ADMISSION OF
IMPROPER AND INFLAMMATORY CHARACTER AND OPINION
EVIDENCE (PROSECUTOR AND WITNESS COMMENTS),
CONTRARY TO THE FOURTEENTH AMENDMENT AND THE
MICHIGAN CONSTITUTION.

III.    DEFENDANT WAS DENIED A FAIR TRIAL BY IMPROPER
PROSECUTOR ARGUMENT.

IV.     DEFENDANT WAS DENIED A FAIR TRIAL AND EFFECTIVE
ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO OBJECT
TO THE ADMISSION OF HIGHLY INFLAMMATORY AND
IRRELEVANT EVIDENCE, FAILED TO OBJECT TO INFLAMMATORY
OPINION AND CHARACTER EVIDENCE, AND FAILED TO OBJECT
TO PROSECUTOR MISCONDUCT DURING CLOSING ARGUMENT,
CONTRARY TO THE SIXTH AND FOURTEENTH AMENDMENTS
AND THE MICHIGAN CONSTITUTION.   ADDITIONALLY, THE
TRIAL COURT ABUSED ITS DISCRETION IN NOT ORDERING AN
EVIDENTIARY HEARING.

V.      MCL 768.27a IS AN UNCONSTITUTIONAL EX POST FACTO LAW
VIOLATING US CONST, ART I, § 10, BECAUSE IT ALLOWED THE
STATE TO CONVICT DEFENDANT OF SECOND-DEGREE CRIMINAL
SEXUAL CONDUCT ON LESS OR DIFFERENT TESTIMONY THAN
THE RULES OF EVIDENCE REQUIRED AT THE TIME OF THE
ALLEGED COMMISSION OF THE OFFENSE.

VI.     OFFENSE VARIABLE 4 (SERIOUS PSYCHOLOGICAL INJURY) WAS
IMPROPERLY SCORED BECAUSE THERE WAS INSUFFICIENT
EVIDENCE, OR NO EVIDENCE, TO SUPPORT IT.

VII.    DEFENDANT'S SENTENCE WAS IMPROPERLY ENHANCED ON THE
BASIS OF FACTUAL FINDINGS NOT FOUND BY THE JURY BEYOND
A REASONABLE DOUBT I.E. THE SCORING OF THE OFFENSE

3

VARIABLES, CONTRARY TO HIS SIXTH AMENDMENT RIGHT TO A JURY TRIAL AND HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Lucas*, No. 280417, 2009 WL 211896 (Mich. Ct. App. Jan. 29, 2009) (per curiam).

5.     Petitioner sought leave to appeal these issues to the Michigan Supreme Court. Petitioner also raised two additional claims: (1) violation of *Miranda*; and (2) the acts depicted in the videos did not meet the "listed sex acts" set forth in § 750.145c.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Lucas*, 485 Mich. 863, 771 N.W.2d 775 (2009).

6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on December 14, 2010.  As grounds for the writ of habeas corpus, he raises the seven claims that he raised in the Michigan Court of Appeals.  Although not clear, it appears that petitioner may also be attempting to raise a Fourth Amendment claim.[1]

7.     Respondent filed his answer on June 29, 2011.  He contends that petitioner's evidentiary and prosecutorial misconduct claims are barred by petitioner's procedural default, and that all of petitioner's claims are without merit.

8.     Petitioner filed a supplement to his habeas petition on July 11, 2011.  Although not clear, it appears that petitioner argues in his supplement that the evidence was insufficient to sustain his convictions.

---

[1]Petitioner filed the form petition, as well as a copy of the brief filed by counsel in the Michigan Court of Appeals.  The section of the form petition lists the seven claims raised in the Michigan Court of Appeals as grounds for relief.  However, in the section of the form that asks petitioner to state the relief he is seeking, petitioner asks the Court to grant him the writ of habeas corpus "as his conviction was base[d] on evidence that was illegal obtained from his home, i.e., a video stolen by former boy friend Defend."  Form Pet., at 16.

4

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the discovery of various video tapes and video discs in petitioner's home.  The evidence adduced at trial was accurately summarized in petitioner's brief in the Michigan Court of Appeals:

> On August 27, 2006, Peter Burke went to Defendant's home in order to borrow money.  Peter was the ex-boyfriend of Defendant's daughter, Kristina Lucas; in addition, Peter and Kristina had a child in common, Tyler Burke.  Peter knocked, but nobody answered, so he entered the home.  He became suspicious when he saw video recording equipment seemingly "posed" so that the lens faced the bed in one of the bedrooms and videotapes all over.  Many of the tapes appeared to be number coded, but at least one of them was entitled "Maddie" so Burke took that tape, along with some others.  "Maddie" is 6-year old Madilynn, Kristina Lucas' child by another man.  On Peter's prior visits to the home he had not seen a similar video setup or tapes.

> Burke took the tapes home and began to watch one of them, which portrayed a naked male (who Burke recognized as Defendant) masturbating.  This male was also engaging in various excretory activities.  Burke could not watch anymore, so he asked his then-girlfriend, Carrie, to watch the tapes and to let him know if there were any children on the tapes.  Soon afterwards, Carrie called him to view one of the tapes.  This tape had images of Madilynn, Kristina Lucas' young daughter, wrapped in a towel.  The videographer would lift the towel and film the child's buttocks.  Burke also witnessed close-ups of the child's exposed genital area and other girls being asked to lift their skirts.

> Worried and anxious, Burke called Kristina late at night but, because she did not answer he called Joyce Weinmann, Kristina's mother (Madilynn's grandmother and Defendant's ex-wife) and told her about the tapes.  The next morning, Joyce, Carrie and Kristina all gathered with Burke at his home, where they watched the videos.  Joynce Weinmann took the tapes, saying she was going to the police.

> By the time of trial, Madilynn, Defendant's granddaughter was six years old.  Her mother, Kristina, had no idea that Madilynn was being filmed and identified her as being on one of the tapes from a Polaroid showed to her by the detective.

> Joyce Weinmann, Defendant's ex-wife, testified that she divorced Defendant in 1981 because he had been taking pictures of their son Kevin and a girl named Lisa Hamilton.  She watched about three tapes and said there was no doubt that the man in the video was Defendant, and that she saw Defendant putting a Coke bottle up his rectum and rubbing feces on his body.  She also saw videos of her granddaughter, Madilynn, and the young daughter of one of Defendant's friends, being offered money to lift her shirt.  Joyce also described that she had seen Defendant in one of the videos pick up Madilynn, spread her legs, and pose her vaginal area in front of the camera.

5

Joyce watched the videos for about an hour before taking them to the Kentwood Police Department. By this time, she had spoken with her daughter, Leanna (Kristina's sister) and told her what she had seen. She then related that in 1981, she had surprised Defendant taking photos of their son, Kevin, and Lisa. At that time, Defendant admitted that he had penetrated Lisa with his finger.

Detective Gerald McCarthy performs forensic computer investigations for the Kentwood Police Department. He assisted in drafting and executing the search warrant at Defendant's house. As McCarthy was walking around the house, he and another officer saw Defendant poking with a stick at a big bonfire. McCarthy could see that various tapes and pornographic material was in the bonfire. Defendant told McCarthy that he had been expecting him.

The resulting search of Defendant's house revealed many photos, pornographic magazines, videos, and video recording equipment in the house. Ultimately, more than 400 videos were recovered, some of which had children's genitalia displayed for the camera.

Detective Michelle Clark testified that she had taken "samplings" of the videos and photos, but had not reviewed all of them, only "several," which she later estimated at between 30 and 40. She was able to get positive identifications of three of the children on the video tapes, including Madilynn. Clark then graphically described the content of at least one of the tapes. According to Clark, what preceded and followed the snippets of the children were shots of Defendant masturbating. At least one of the tapes was played for the jury.

Rosa Carillon identified her daughter Priscilla, and Robert Schnotala identified his daughter Stephanie on one of the tapes. Evidence of Defendant's prior convictions for criminal sexual conduct involving a child in 1982 was also admitted.

The defense presented no witnesses. . . .

Def.-Appellant's Br. on App., in *People v. Lucas*, No. 280417 (Mich. Ct. App.), at 11-13 (citations to trial transcript omitted); *see also*, *Lucas*, 2009 WL 211896, at *1.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in

6

custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by

the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Evidentiary Claims (Claims I, II, V)*

Petitioner first raises several challenges to the admission of evidence at his trial. In Claims I and II, he contends that he was denied a fair trial by the admission of prejudicial videotape evidence that was unrelated to the charges, and by the admission of testimony from witnesses describing the acts they observed on the video tapes. In Claim V, petitioner argues that the

8

admission of other acts evidence under MICH. COMP. LAWS § 768.27a violated the Ex Post Facto

Clause.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.[2]

1.    *Improper Admission of Prejudicial Evidence (Claims I-II)*

a.  *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the

application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we

reemphasize that it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a

federal court on habeas review "ha[s] no authority to review a state's application of its own laws).

Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an

---

[2]Respondent contends that petitioner's evidentiary claims, as well as his prosecutor misconduct claims discussed in the next section, are barred by petitioner's procedural default in the state courts.  The Michigan Court of Appeals, relying on the well established contemporaneous objection rule, *see, e.g.,* *People v. Duncan*, 402 Mich. 1, 15-16, 260 N.W.2d 58, 61-62 (1977); *People v. Curry*, 175 Mich. App. 33, 39, 437 N.W.2d 310, 314 (1989), concluded that these claims were forfeited and reviewed them only for plain error.  *See Lucas*, 2009 WL 211896, at *1-*5.  Because the state court clearly and expressly relied on this state procedural rule with respect to petitioner's evidentiary and prosecutorial misconduct claims, they are procedurally defaulted and review is barred absent a showing of either cause and prejudice or a fundamental miscarriage of justice.  *See Engle v. Isaac*, 456 U.S. 107, 125-129 (1982) (state contemporaneous objection rule is adequate procedural bar precluding consideration of habeas claims).  This is so even through the court of appeals reviewed the merits of the claims in determining whether petitioner could establish plain error.  *See White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005) ("[P]lain error review by the state court does not constitute a waiver of procedural default rules.").  Nevertheless, petitioner asserts that counsel was ineffective for failing to lodge objections to the evidence and prosecutor's comments at trial.  If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Consideration of counsel's effectiveness, however, depends in part on consideration of petitioner's underlying claims.  Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

*b. Analysis*

Petitioner first contends that he was denied a fair trial by the admission of the entirety of the videotapes. As testified to at trial by various witnesses the tapes included, interspersed with the segments depicting minors, segments which involved petitioner by himself masturbating, penetrating himself with various objects, and defecating. Petitioner contends that these portions of the videos

were irrelevant to the jury, and were given to the jury solely to inflame the passions of the jurors. Petitioner cannot show that he was denied a fair trial by the admission of this evidence, because the evidence was relevant.  To sustain the CSC-II charges, the prosecutor was required to prove, *inter alia*, that petitioner engaged in "sexual contact" with the victims.  *See* MICH. COMP. LAWS § 750.520c(1)(a).  To establish "sexual contact," the prosecution was required to show that the contact was done "for the purpose of sexual arousal or gratification" or "done for a sexual purpose."  MICH. COMP. LAWS § 750.520a(q).  This element can be established through circumstantial evidence.  *See People v. Bishop*, No. 300836, 2011 WL 6378827, at *2 (Mich. Ct. App. Dec. 20, 2011) (per curiam); *People v. Harrington*, No. 258401, 2006 WL 397937, at *8 (Mich. Ct. App. Feb. 21, 2006) (per curiam).  Petitioner's defense at trial was that the videotapes were not made with the intention of sexually exploiting the children in the videos.  *See* Trial Tr., Vol. II, at 63-64 (closing argument).  The fact that the videos of the children were interspersed with scenes of petitioner engaging in autoerotic acts provided circumstantial evidence that the acts performed on the children were, in fact, done for a sexual purpose.  Thus, the entirety of the tapes was relevant, and petitioner cannot show he was denied a fair trial by their introduction.

Petitioner also contends that he was denied a fair trial because various witnesses were permitted to make "editorial comments" concerning his behavior.  For example, after being asked to explain to the jury what she saw on the tapes, Weinmann described the acts petitioner performed on himself and stated, "It was disgusting.  I've never seen anything like this before.  This is not normal for a person to do this to your body."  Trial Tr., Vol. I, at 80.  In describing her confrontation with petitioner following the 1981 incident involving petitioner with her son and Lisa, Weinmann testified, "I was just, I was shocked.  I says, 'Why do you want to do that kind of stuff?  That's not

normal, that's sick.'" *Id*. at 89.  She further testified that she was angry with petitioner, stating that she was "hurt that he could hurt so many people and children, you know, little kids."  *Id*. at 94. Petitioner also points to the testimony of Detective Clark, who explained that she reviewed only a sample of the tapes because "what I had seen was enough.  I mean, that would be very difficult.  I had trouble sitting through the tapes that I did, let alone sit there and watch four hundred tapes with such disturbing material on them." *Id*. at 130.  Petitioner contends that this testimony added nothing to the case other than to suggest that he had vile sexual appetites, and that it was therefore unfairly prejudicial.

The Michigan Court of Appeals, conducting plain error review, rejected petitioner's claim, concluding that petitioner could not establish that he was prejudiced by the admission of this testimony.   This determination was reasonable.   First, the evidence against petitioner was overwhelming, consisting of 400-some videos compiled by petitioner himself which depicted the acts for which he was charged.   Further, as explained above, the entirety of the videotapes was properly admitted, and thus the jury had before it the actual visual evidence that the witnesses described as disturbing or disgusting.   There is no reason to think that the jurors, who could view the acts themselves, would be swayed one way or the other by the witnesses' characterizations of petitioner's acts.  In light of the overwhelming evidence against petitioner and the fact that the jurors themselves could view the tapes and come to their own conclusions, petitioner cannot show that he was denied a fair trial by this testimony.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.      *Constitutionality of MCL § 768.27a (Claim V)*

In his fifth claim, petitioner contends that prior acts evidence was improperly admitted under

12

MICH. COMP. LAWS § 768.27a in violation of the Ex Post Facto Clause, because that statute was enacted after the conduct which formed the basis of the criminal charges.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### a.  Clearly Established Law

Article 1, § 10 of the United States Constitution prohibits states from passing *ex post facto* laws.  In *Collins v. Youngblood,* 497 U.S. 37 (1990), the Supreme Court explained that the Ex Post Facto Clause of the U.S. Constitution incorporated "a term of art with an established meaning at the time of the framing of the Constitution."  *Id*. at 41.  In connection with this interpretation, the Court held that the Clause targets laws that "retroactively alter the definition of crimes or increase the punishment for the criminal act." *Collins,* 497 U.S. at 43 (*citing to Calder v. Bull,* 3 U.S. (Dall.) 386, 391-392 (1798)(Chase, J.); *Beazell v. Ohio,* 269 U.S. 167, 169-170 (1925)).  To fall within the *ex post facto* prohibition, a law must be retrospective, *i.e.*; "it must apply to events occurring before its enactment" and it "must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29 (1981).  The classic formulation of what constitutes an ex post facto law was set forth by Justice Chase in *Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798):

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.  2d. Every law that aggravates a crime, or makes it greater than it was, when committed.  3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.  4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Id*. at 390.  Thus, an ex post facto law is one which:  (1) punishes an act previously committed as a crime, although the act was not a crime when done; (2) increases the penalty for a crime after its commission; and (3) deprives a defendant of any defense which was available at the time the act was

13

committed.  *See Collins*, 497 U.S. at 52.

*b. Analysis*

Generally, the admission in a criminal trial of evidence of a defendant's acts other than those with which he is charged is governed by Rule 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MICH. R. EVID. 404(b)(1).  In 2005, after the conduct at issue in this case occurred, the Michigan legislature enacted § 768.27a, which became effective on January 1, 2006, as a supplement to Rule 404(b) in cases involving sexual offenses with minors. Section 768.27a provides, in relevant part, that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."  MICH. COMP. LAWS § 768.27a(1).[3]  Petitioner, citing to the fourth ex post facto formulation in *Calder*, contends that § 768.27a "alters the legal rules of evidence" and thus its application in his case violated the Ex Post Facto Clause.

The Michigan Court of Appeals rejected this claim, relying on its prior decision in *People*

---

[3]A "listed offense" under § 768.27a(1) "means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722."  MICH. COMP. LAWS § 768.27a(2).  Section 2 of the Sex Offenders Registration Act, in turn, defines "listed offense" to include, as relevant here, violations of § 750.145c(4), *see* MICH. COMP. LAWS § 28.722(s)(*l*); violations of § 750.145c(2), *see* MICH. COMP. LAWS § 28.722(u)(*iii*); and violations of § 750.520c with a victim under the age of 13, *see* MICH. COMP. LAWS § 28.722(w)(*r*).

14

*v. Pattison*, 276 Mich. App. 613, 741 N.W.2d 558 (2007). *See Lucas*, 2009 WL 211896, at \*6. In *Pattison*, the court reasoned that although the statute may allow introduction of evidence that previously would have been inadmissible under Rule 404(b), "the altered [admissibility] standard does not lower the quantum of proof or value of the evidence needed to convict a defendant." *Pattison*, 276 Mich. App. at 619, 741 N.W.2d at 561-62. For example, the court explained, the defendant could be convicted solely on the basis of the victim's testimony, regardless of any evidence admitted under the statute. Thus, the statute did not alter the standard for conviction, and therefore did not violate the ex post facto prohibition. *See id.*, 741 N.W.2d at 562.

This conclusion was correct. In *Carmell v. Texas*, 529 U.S. 513 (2000), the Supreme Court considered a Texas rule which abolished the requirement of corroboration of a victim's testimony before a defendant could be convicted of sexual assault. *See id.* at 516. The Court held that retroactive application of this rule was an ex post facto law because it "changed the quantum of evidence necessary to sustain a conviction." *Id.* at 530. The court noted that the rule did not simply regulate the mode by which evidence is presented to the jury, but rather the sufficiency of the prosecutor meeting the burden of proof. *See id.* at 545. The Court was careful to note, however, that ordinarily rules of evidence do not constitute an ex post facto law under the fourth *Calder* formulation. The court explained that such rules do not "necessarily affect, let alone subvert, the presumption of innocence. The issue of the admission of evidence is simply different from the question whether the properly admitted evidence is sufficient to convict the defendant." *Id.* at 546. As the Court explained:

> We do not mean to say that every rule that has an effect on whether a defendant can be convicted implicates the Ex Post Facto Clause. Ordinary rules of evidence, for example, do not violate the Clause. Rules of that nature are ordinarily evenhanded, in the sense that they may benefit either the State or the defendant in

15

> any given case. More crucially, such rules, by simply permitting evidence to be admitted at trial, do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption. Therefore, to the extent one may consider changes to such laws as "unfair" or "unjust," they do not implicate the same kind of unfairness implicated by changes in rules setting forth a sufficiency of the evidence standard.

*Id*. at 533 n.23.

Here, the rule implemented by § 768.27a is a procedural rule governing the admissibility of evidence; it does not, as in *Carmell*, in any way change the prosecutor's burden of proof or the sufficiency of the evidence necessary to meet that burden. Thus, the court of appeals was correct in finding no ex post facto problem in the application of § 768.27a. *See Schroeder v. Tilton*, 493 F.3d 1083, 1088 (9th Cir. 2007) (California statute permitting introduction of evidence of prior uncharged sexual misconduct did not alter the quantum of proof necessary to sustain conviction, and thus did not constitute an ex post facto law); *State v. Willis*, 915 So. 2d 365, 382 (La. Ct. App. 2005) (same with respect to similar Louisiana law); *State v. Scherner*, 225 P.3d 248, 255-56 (Wash. Ct. App. 2009) (same with respect to similar Washington law), *rev'd in part on other grounds sub nom. State v. Gresham*, 269 P.3d 207 (Wash. 2012); *cf. Trotter v. Secretary, Dep't of Corrections*, 535 F.3d 1286, 1292-93 (11th Cir. 2008) (retroactive application of new law permitting introduction of victim impact evidence at penalty phase in capital case did not violate Ex Post Facto Clause because the new law did not alter the quantum of evidence necessary to impose death penalty); *Neill v. Gibson*, 278 F.3d 1044, 1051-53 (10th Cir. 2001) (same); *People v. Dolph-Hostetter*, 256 Mich. App. 587, 594-600, 664 N.W.2d 254, 258-61 (2003) (retroactive application of change in Michigan marital communications privilege did not constitute ex post facto law under *Carmell*). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Prosecutorial Misconduct (Claims II-III)*

Petitioner next contends that the prosecutor committed misconduct in several respects, and that he was thereby denied a fair trial. Specifically, petitioner contends that the prosecutor committed misconduct by making prejudicial comments during *voir dire*, appealing to the jury's prejudice and emotion during closing argument, and asking the jury to convict him out of civic duty. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

2.     *Analysis*

a. *Voir Dire Comment*

Petitioner first contends that he was denied a fair trial by the prosecutor's comments during

17

*voir dire* describing the contents of the videotapes as "disgusting." Specifically, in describing the nature of the charges against petitioner and the evidence that would be presented to the jury, the prosecutor stated:

> And on [the videos], there is filmed evidence of the defendant having these sexual contacts with these minor young girls. One is his granddaughter and two others are neighborhood children, okay?
>
> There's also extensive filming of the defendant's sexual habits, basically involving masturbation and other acts which at this point I'm not going to even describe to you. But I will tell you this. There's a lot of very, very in a word disgusting activities the defendant we allege did not these tapes.
>
> It's really the most difficult part of this case for us to deal with. How do I present this to a jury.
>
> None of you are going to want to watch this, and I'm going to show as little of it as possible, okay? One of the reasons we have the detective go through them is so that you don't have to view a lot of this. You can, they'll be there for you to view and I will have to play some of them in order to prove my elements, but I, having sat down on two occasions, have gotten more than I ever wanted to see.

Jury Voir Dire Tr., at 48-49. The Michigan Court of Appeals, applying plain error review, rejected petitioner's claim. The court explained that "the challenged remarks were made for the purpose of determining whether the prospective jurors could view the type of evidence that was to be introduced at trial," *Lucas*, 2009 WL 211896, at *2, and that the jury was instructed prior to *voir dire* that the "purpose of the lawyers' questions was to choose a fair and impartial jury" and after jury selection that "their verdict must be based on the evidence at trial and that the statements made by the prosecutor and defense counsel are not evidence." *Id*. This determination was reasonable.

It is apparent that, as the court of appeals observed, the prosecutor's comments were designed to determine whether any of the prospective jurors would have difficulty considering the type of evidence that would be introduced at trial. Immediately following the above quoted comment, the prosecutor continued:

> So the point of this is this. It's a very difficult subject matter. If I were to ask

18

all of you right now, "All right, now who doesn't want to sit on this case," I expect every hand to go up, okay?

The problem is I need twelve, eventually twelve good people to sit through this, to slog through it, just like the detectives had to slog through it, all right?

You are the system. When Judge Buth says you're a very important part of the system, it isn't just something that he's got to say it because he's an elected official. It's because you're an integral part of the system, okay? I need twelve law-abiding, twelve intelligent people to sit there and listen to these actual facts and view some of the footage. Again, I will put out as little of it as possible as I think necessary to prove these elements.

Having said that, is there anybody that feels they cannot sit on a case involving those kinds of facts? I know you don't want to, that's not the question. The question is, who feels they cannot possibly in any way sit on that kind of case?

Jury Voir Dire Tr., at 49-50. It is clear that the prosecutor was attempting to determine whether the prospective jurors would be able to consider the evidence that would be presented in the case, a proper subject for inquiry on *voir dire*. The Sixth Circuit considered a nearly identical issue in *United States v. Bartos*, 51 Fed. Appx. 957 (6th Cir. 2002). In *Bartos*, the defendant was charged with knowingly attempting to receive child pornography. Similarly to the prosecutor in petitioner's case, the prosecutor in *Bartos* asked whether the prospective jurors whether they would be able to consider the "repulsive" material that would be introduced into evidence, stating:

[W]e don't think we'll have to show you the videotape. It looks like the attorneys can agree that the contents of that don't have to be reviewed. But there is [obstructed text] swingers' magazine and you probably should see the ads in [obstructed text] and I'm afraid some of the pictures in this magazine are pretty repulsive. Unfortunately, we have to provide it to you. Do you think you'll be able to look at and review the evidence even though it's not particularly attractive stuff?

*Bartos*, 51 Fed. Appx. at 962 (quoting trial transcript) (alternations in original). Reviewing the claim for plain error, the court rejected the petitioner's claim that he was denied a fair trial by this comment during *voir dire*, noting that the defendant had "provide[d] no cases in which comments such as those made by the prosecutor in the instant action have constituted reversible error." *Id.* at 963. Further, the court explained that the comment did not amount to misconduct because it "was

19

made in the context of ascertaining the venire's difficulty or bias regarding the viewing of sexually explicit material," *id*. at 964, the comment was isolated, and the evidence against the defendant was overwhelming, including correspondence to which defendant was a participant in which the parties discussed sexually explicit material containing young girls. *See id*. at 964-65.

*Bartos* is directly on point. Here, as in *Bartos*, the prosecutor's comment was an isolated statement made in the context of determining whether the prospective jurors would be able to view and consider the evidence in the case. Further, as in *Bartos*, the evidence in this case was overwhelming, consisting of numerous videos depicting the acts which formed the basis of the criminal charges. In light of *Bartos*, the Michigan Court of Appeals's rejection of petitioner's claim was not unreasonable. *Cf. Bible v. Schriro*, 497 F. Supp. 2d 991, 1021 (D. Ariz. 2007) (prosecutor's statement during *voir dire* that prospective juror's natural dislike of "child murders" and "child rapists" would not disqualify them from service not improper where, when viewed in context, it was "apparent that the prosecutor's reference . . . was an attempt, albeit inartful, to assure the venire members that their natural reaction to the crimes alleged against Petitioner would not serve as a disqualifying factor if they could set those feelings aside and judge the case fairly."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b.  Appeal to Emotion and Civic Duty

Petitioner also contends that the prosecutor improperly appealed to the jury's prejudice and emotion, and made an improper civic duty argument, during closing and rebuttal argument. Petitioner specifically takes issue with two portions of the prosecutor's argument:

> (1)  "The judge is going to read you an instruction concerning intent. For those of you that sat as jurors and for those of you who have not, you will not be receiving a crystal ball, as we talked about in voir dire. You are going to be taking the instructions and the elements, the law, from Judge Buth, and

20

then go back there and then couple that with the facts as you determine them to be and render a fair and just verdict, because not only does Mr. Lucas have a right to a fair trial, but so does Madilynn Skinner, so does Stephanie Schnotala, so does Priscilla Haas.  All three of those young girls have that right, as much as Mr. Lucas and as do we as a society, as the People of the State of Michigan.  Both sides are entitled to a fair trial.

So I hope there's none of you that feel that I played too much.  Maybe I did.  We don't know.  As assistant prosecutor, my job is to put the facts forward as best as possible.  There were over four hundred tapes, as you heard, in this particular prosecution.  It's impossible to show you all that, nor could you ever stomach all that.

But on the other hand, I have the elements, I have the burden of proof here.  We accept that burden and I have to prove each and every one of those elements beyond a reasonable doubt.  And I submit to you folks . . . and you couple that with the facts that you not only heard from the witness stand but that you also saw on film, there will be no doubt in your mind . . . that what we have over hear is an individual that doesn't bear describing. . . .

It doesn't take a rocket scientist, folks, to figure out what Mr. Lucas is.  We know what he is.  I'm going to ask you to do your duty, go back and weigh the evidence and return a verdict of guilty on all five counts."  Trial Tr., Vol. I, at 58-60.

(2)        "The bottom line here, folks, that young lady can't testify, two other young ladies can't testify, Stephanie and Priscilla, but they cry out for justice.  They don't even know to cry out for justice.  They don't even know if they should cry out for justice, but you know that justice needs to be achieved.  And you know that because of the tapes that are sitting in front of you.  You know that because of the tapes that are in that bag.  You know that by his conduct, both past and current during these incidents.  There is no doubt that Mr. Lucas is an individual with a predilection for children of a sexual nature, and I would ask you to convict on all counts."  *Id*. at 65-66.

Petitioner contends that within these arguments, the prosecutor improperly urged the jury to convict him based on his unsavory character rather than on the basis of the evidence (*e.g.*. the "we know what he is" passage); appealed to sympathy (*e.g.*, the "fair trial" and "cry out for justice" passages); and urged to jury to convict as its civic duty (*e.g.*, the "do your duty" and "justice needs to be achieved" passages).  The Michigan Court of Appeals, conducting plain error review, rejected these claims.  With respect to petitioner's character and sympathy claims, the court reasoned that

21

"[e]xamined in context, the prosecutor was not attacking defendant's character, but rather arguing that defendant's conduct, as depicted by the videotapes and his similar past behavior, was part of a pattern of deliberate criminal conduct." *Lucas*, 2009 WL 211896, at *4. Further, the court reasoned, any possible prejudice was dispelled by the trial court's instruction to the jury that it should not let sympathy or prejudice influence its verdict. *See id*. With respect to petitioner's civic duty claim, the court reasoned that the prosecutor's comments were not improper appeals to civic duty but were merely an argument that the jury "could convict on the weight of the evidence even without the testimony of the children," and that "any possible prejudice was dispelled by the trial court's instruction that the jury was to decide the case on the basis of the evidence and that the lawyers' statements are not evidence." *Id*. at *5. The Court should conclude that this determination was reasonable.

With respect to petitioner's sympathy argument, it is true that the prosecutor's comments seem designed to elicit a certain amount of sympathy for the victims. However, in light of the overwhelming evidence of petitioner's guilt, petitioner cannot show that these comments deprived him of a fair trial. Although the prosecutor's language may have been somewhat emotional, the prosecutor did not ask the jury to convict out of sympathy for the victims or appeal to the jury to act as the conscience of the community. On the contrary, as is evident from the passages cited by petitioner, the prosecutor advised the jury to "weigh the evidence," and discussed how the evidence established petitioner's guilt. Further, even if improper the prosecutor's references to the victims were much less prejudicial than other comments referring to victims which have been upheld on habeas review. *See, e.g.*, *Brechen v. Reynolds*, 41 F.3d 1343, 1355-56 (10th Cir. 1994); *United States ex. rel. Rockman v. DeRobertis*, 717 F. Supp. 553, 569-70 (N.D. Ill. 1989)(prosecutor's

reference to victim "in his grave crying out for a guilty verdict" did not deprive petitioner of a fair trial); *Kordenbrock v. Scroggy*, 680 F. Supp. 867, 896-96 (E.D. Ky. 1988)(petitioner was not denied a fair trial where, during the guilt-innocence phase of the trial, the prosecutor admonished the jury not to forget the victim because "he had a right to live."), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1999)(en banc). Finally, and potential prejudice was cured by the trial court's instruction to the jury that it must decide the case solely on the evidence and "must not let sympathy or prejudice influence your decision." Trial Tr., Vol. II, at 67; *see Baylor v. Renico*, No. 05-CV-71624, 2009 WL 982212, at *7 (E.D. Mich. Apr. 13, 2009) (Hood, J.); *Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999) (Cleland, J.).

Nor is petitioner entitled to habeas relief with respect to his civic duty claim. A "civic duty" argument is one which "encourages the jury to convict the defendant based upon principles of protection of the community and encourages them to ignore the evidence in the case." *United States v. Mejorado-Soto*, No. 94-2404, 1995 WL 764115, at *2 (6th Cir. Dec. 27, 1995) (per curiam). Here, the prosecutor did not encourage the jury to convict by ignoring the evidence. On the contrary, the prosecutor explicitly told the jury that its duty was to "go back and weigh the evidence." Further, "[a] prosecutor does not overstep the bounds of propriety by appealing to the jurors' sense of justice." *Fuller v. Lafler*, ___ F. Supp. 2d ___, 2011 WL 4837495, at *16 (E.D. Mich. 2011) (Lawson, J.) (citing *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009)). Finally, even if the prosecutor's argument was an improper civic duty argument, in light of the overwhelming evidence and the trial court's instruction to the jury that its verdict should be based on the evidence and the law and not on sympathy the argument was not so prejudicial as to deprive petitioner of a fair trial. *See Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003) (Gadola,

J.).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

F.      *Ineffective Assistance (Claim IV)*

Petitioner next contends that counsel was ineffective in several respects.  Specifically, he contends that counsel was ineffective for failing to object to the improper evidence and prosecutorial comments identified in Claims I-III.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*  With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*.  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize

24

that counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the

prejudice prong, the reviewing court must determine, based on the totality of the evidence before

the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the

elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818,

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v.

Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v.
> Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An
> ineffective-assistance claim can function as a way to escape rules of waiver and
> forfeiture and raise issues not presented at trial, and so the Strickland standard must
> be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the
> integrity of the very adversary process the right to counsel is meant to serve.
> *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the
> standard for judging counsel's representation is a most deferential one. Unlike a later
> reviewing court, the attorney observed the relevant proceedings, knew of materials
> outside the record, and interacted with the client, with opposing counsel, and with
> the judge. It is "all too tempting" to "second-guess counsel's assistance after
> conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*,
> 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*,
> 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether
> an attorney's representation amounted to incompetence under "prevailing
> professional norms," not whether it deviated from best practices or most common
> custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>      Establishing that a state court's application of *Strickland* was unreasonable
> under § 2254(d) is all the more difficult. The standards created by *Strickland* and §
> 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*,
> 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two
> apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420.

25

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Analysis*

Petitioner is unable to overcome the high bar set forth in *Harrington*.  In rejecting petitioner's ineffective assistance claim, the court of appeals reasoned that any objection to the complete videotapes would have been futile because they were relevant to establishing that petitioner "compiled the images in the manner depicted for a sexual purpose."  *Lucas*, 2009 WL 211896, at *6.  Further, with respect to the other evidence and prosecutorial remarks, the court concluded that petitioner could not establish prejudice.  *See id*.  This determination was reasonable.

As explained above, and as confirmed by the Michigan Court of Appeals, the entirety of the videotapes was admissible as a matter of state law.  In analyzing petitioner's ineffective assistance claim, the Michigan Court of Appeals's conclusion that the evidence was properly admitted is binding.  *See Narlock v. Hofbauer*, 118 Fed. Appx. 34, 34 (6th Cir. 2004) (per curiam); *Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999).  And because the evidence was admissible under state law, petitioner cannot show that any objection to the evidence or jury instructions would have been successful.  It follows, therefore, that petitioner cannot show that counsel was deficient, *see Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006) (counsel not ineffective for failing to raise meritless objection); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (same); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993) (same), or that he was prejudiced by counsel's failure to object, *see Keller v. Larkins*, 251 F.3d 408, 419 (3d Cir. 2001).

26

Likewise, as explained above, petitioner cannot show that the admission of the other evidence or the prosecutor's comments, even if improper, were sufficiently prejudicial to deprive him of a fair trial.  It therefore follows that petitioner was not prejudiced by counsel's failure to object to the evidence and comments.  *See White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance claim.

3.    *Evidentiary Hearing*

As part of his ineffective assistance claim, petitioner also contends that the trial court erred in failing to hold an evidentiary hearing to explore counsel's reasons for failing to object.  To the extent petitioner is asserting this argument as an independent basis for habeas relief, it is without merit.  Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)).  As the Sixth Circuit has explained:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002). . . . [C]laims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411

27

U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id*. at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id*. at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007). The trial court's failure to hold an evidentiary hearing, even if erroneous under state law, does not entitle petitioner to habeas relief. *See Chaussard v. Fulcomer*, 816 F.2d 925, 932 (3d Cir. 1987); *Edwards v. State of Kansas*, 751 F. Supp. 197, 199 (D. Kan. 1990).

To the extent petitioner seeks an evidentiary here, the court should conclude that one is not necessary. In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) is a hearing is permitted under 28 U.S.C. § 2254(e)(2). In deciding whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d

28

331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying

pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963).  As the Supreme Court

recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted).

Here, petitioner cannot establish that an evidentiary hearing would have the potential to

advance his claims.  Petitioner contends that an evidentiary hearing is necessary to explore the bases

of trial counsel's decisions.  However, as explained above petitioner's ineffective assistance claims

fail because the matters identified by petitioner were not objectionable, or because petitioner was

not prejudiced by counsel's failure to object.  These conclusions are apparent from the record and

require no further factual development.  Accordingly, the Court should conclude that petitioner is

neither entitled to habeas relief based on the trial court's failure to hold an evidentiary hearing nor

entitled to an evidentiary hearing in this Court.[4]

G.    *Sentencing Claims (Claims VI and VII)*

Petitioner next raises two challenges to his sentences.  First, he contends that the trial court

---

[4]Because an evidentiary hearing is not necessary under Rule 8, the Court need not consider whether an evidentiary hearing would have any utility in light of the Supreme Court's recent decision in *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (holding that, with respect to any claim adjudicated on the merits to which § 2254(d) applies, the federal court's review is limited to the record that was in existence at the time of the state court decision).

erred in scoring Offense Variable 4 (OV4) of the Michigan sentencing guidelines.  Second, he contends that his sentence was improper because it was based on facts not found beyond a reasonable doubt by the jury.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

    1.    *Guidelines Scoring (Claim VI)*

Petitioner's challenge to the scoring of OV4 is not cognizable on habeas review.  A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987).  Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Petitioner's claim that the court improperly scored the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).  Thus, petitioner is not entitled to habeas relief on his claim related to the trial court's scoring of the Michigan sentencing guidelines.

    2.    *Blakely Claim (Claim VII)*

Petitioner also contends that his sentence violates the rule of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*, the Court held that

30

"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines.  The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed.  The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt.  Two separate majorities formed the Court's decision.  Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*.  Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id.* at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*.

31

A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id.* at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines, his sentence violates *Blakely* and *Apprendi*. However, Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases

32

the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant).  As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence.  The maximum is, in every case, the statutory maximum authorized by law.  *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the various charges, therefore, contained all of the factual findings necessary to impose the statutory maximums on those charges. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

　　This being the case, petitioner's sentences did not violate *Blakely*.  The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea.  As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights.  The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557.  This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury.  For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*.  Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.    *Fourth Amendment*

As noted at the outset of this Report, it appears that petitioner may be attempting to raise a Fourth Amendment challenge, stating in the "relief requested" section of his form application that he seeks the writ "as his conviction was base[d] on evidence illegally obtained from his home, i.e., a video stolen by former boy friend of Defend." Form Pet., at 16. To the extent petitioner is attempting to assert such a claim, it is unexhausted and therefore the Court may not grant habeas

34

relief on this claim to petitioner.  *See* 28 U.S.C. § 2254(b)(1).  The Court may deny relief with

respect to this claim on the merits notwithstanding petitioner's failure to exhaust.  *See* 28 U.S.C. §

2254(b)(2).  For the two reasons explained below, petitioner is not entitled to habeas relief on his

Fourth Amendment claim, to the extent he is attempting to assert such a claim.

1.     *The Claim is Not Cognizable*

Because "the exclusion of illegally seized evidence is simply a prophylactic device intended

to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394

U.S. 217, 224 (1969), the Supreme Court has determined that

> where the State has provided an opportunity for full and fair litigation of a Fourth
> Amendment claim, the Constitution does not require that a state prisoner be granted
> federal habeas corpus relief on the ground that evidence obtained in an
> unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also, Cardwell v. Taylor*, 461 U.S. 571, 571-72

(1983) (per curiam).  Thus, petitioner's claim is not cognizable on habeas review if he had an

adequate opportunity to present his claim to the state courts.  "For such an opportunity to have

existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and

the presentation of the claim in this case must not have been frustrated by a failure of that

mechanism."  *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985); *see also, Riley v. Gray*, 674 F.2d

522, 526 (6th Cir. 1982); *Willett v. Lockhart*, 37 F.3d 1271-72 (8th Cir. 1994).  The requirement that

there be, in the abstract, a mechanism by which to raise the Fourth Amendment claim "is met when

state procedures provide a meaningful vehicle for a prisoner to raise a fourth amendment claim."

*United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985).  There is no question that

Michigan provides such mechanism, in the abstract, to raise and litigate Fourth Amendment claims.

*See Markham v. Smith*, 10 Fed. Appx. 323, 327 (6th Cir. 2001); *Machacek v. Hofbauer*, 213 F.3d

35

947, 952 (6th Cir. 2000).  Thus, petitioner's claim is not cognizable on habeas review.

    2.    *Merits*

    Further, petitioner's claim fails on the merits.  Here, it is undisputed that the videotapes which initially led to the investigation and prosecution of petitioner were taken from petitioner's home by Peter Burke, a private citizen with no connection to the police.[5]  It is well established that the Fourth Amendment only "applies to governmental action" and is not implicated by private "individuals [] taking the property of another."  *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921). As the Supreme Court has explained, the Fourth Amendment "proscrib[es] only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official."  *United States v. Jacobson*, 466 U.S. 109, 113 (1984) (internal quotation omitted).  In short, "[t]he Fourth Amendment does not apply to searches or seizures by private persons," and "the government's subsequent use of the information obtained in the private search does not implicate the Fourth Amendment[.]" *United States v. King*, 55 F.3d 1193, 1196 (6th Cir. 1995).  Because the allegedly illegal seizure was made by a private individual not acting with the knowledge or at the behest of the police, neither the seizure of the tapes nor their use at trial violated the Fourth Amendment.

I.    *Sufficiency of the Evidence*

    Petitioner also appears to be raising a sufficiency of the evidence claim in his reply brief. This claim, as with petitioner's possible Fourth Amendment claim, is unexhausted and thus cannot

---

    [5]Petitioner's claim does not appear to challenge the validity of the subsequent search warrant issued by the magistrate and executed by the police.

be a basis upon which the Court grants habeas relief.  In any event, the claim is without merit.

1.        *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).  In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence.  *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).  However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision.  Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*,

37

*Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

      2.    *Analysis*

      Although it is not entirely clear, petitioner appears to argue that the evidence was insufficient because the videos showed only nude children, and did not depict the children in any sexual acts. In support of this claim, petitioner relies on various federal statutes and, apparently, cases applying those statutes. Petitioner's reliance on these statutes is misplaced. Whether the evidence would have supported petitioner's a conviction under a federal child pornography law is immaterial; petitioner was convicted of state law offenses, and thus, the sufficiency of the evidence is determined by reference to the elements of those offenses under state law. And under state law, the evidence presented was sufficient.

      Section 750.145c(2) makes it a crime for anyone to "persuade[], induce[], entice[], coerce[], cause[], or knowingly allow[] a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material." MICH. COMP. LAWS § 750.145c(2). Section 750.145c(4) similarly makes it a crime to possess child sexually abusive material. *See* MICH. COMP. LAWS § 750.145c(4). Under the statute, "'[c]hild sexually abusive activity' means a child engaging in a listed sexual act," MICH. COMP. LAWS § 750.145c(1)(*l*), and "'[c]hild sexually abusive material' means any depiction . . .which is of a child or appears to include a child engaging in a listed sexual act." MICH. COMP. LAWS § 750.145c(1)(m). And "listed sexual act," in turn, "means sexual intercourse, *erotic fondling*, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, *or erotic nudity*." MICH. COMP. LAWS § 750.145c(1)(h) (emphasis added). The

38

videos depicted petitioner asking the victims to move or remove their clothing to expose their genitals or buttocks, and at times the videos panned in to focus particularly on these areas. *See* Trial Tr., Vol. I, at 133-34, 144; Vol. II, at 7, 9. Further, the videos showed petitioner lifting the buttocks or spreading the labia of the victims, exposing the victims' genital and anal areas to further view. *See id*., Vol. I, at 127-28, 133, 134; Vol. II, at 9, 11. This evidence was sufficient to establish that the videos contained "erotic nudity," and thus constituted "listed sex acts," under § 750.145c. *See Peopel v. McMeeley*, No. 283061, 2010 WL 98691, at *2 (Mich. Ct. App. Jan. 12, 2010) (per curiam); *People v. Riggs*, 237 Mich. App. 584, 587, 590-92, 604 N.W.2d 68, 70, 72-73 (1999).

Further, the evidence was sufficient to show that petitioner was guilty of at least two CSC-II offenses. The CSC-II statute provides, in relevant part, that "[a] person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and . . . [t]hat other person is under 13 years of age." Mich. Comp. Laws § 750.520c(1)(a). As this language indicates and as the Michigan Court of Appeals ha repeatedly explained, the CSC-II statute (as charged against petitioner), contains two elements: "(a) sexual contact, (b) with a person under 13 years of age." *People v. Soltesz*, No. 279275, 2009 WL 323491, at *2 (Mich. Ct. App. Feb. 10, 2009); *People v. Greer*, No. 278746, 2009 WL 279868, at *2 (Mich. Ct. App. Feb. 5, 2009); *People v. Jones*, No. 212117, 2000 WL 33406544, at *1 (Mich. Ct. App. Oct. 17, 2000); *People v. McCary*, No. 196810, 1997 WL 33347853, at *1 (Mich. Ct. App. June 17, 1997). Here, there was no question that the victims were under 13 years of age, and thus the only question was whether petitioner engaged in "sexual contact" with the victims. "Sexual contact," in relevant part, "includes the intentional touching of the victim's or actor's intimate parts . . . if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a

39

sexual purpose[.]" MICH. COMP. LAWS § 750.520a(q).  "Intimate parts," in turn, is defined as "the

primary genital area, groin, inner thigh, buttock, or breast of a human being."  MICH. COMP. LAWS

§ 750.520a(e).  The evidence showing that petitioner touched the victims' labia and buttocks was

sufficient to establish an intimate touching.  *See People v. Bishop*, No. 300836, 2011 WL 6378827,

at *2 (Mich. Ct. App. Dec. 20, 2011) (per curiam); *People v. Paupore*, No. 287475, 2010 WL 99009

at *1 (Mich. Ct. App. Jan. 12, 2010).  Further, there was sufficient circumstantial evidence from

which the jury could conclude that the contact could reasonably be construed as being for the

purpose of sexual arousal or gratification, or was done for a sexual purpose.  The evidence showed

that petitioner made hundreds of videos featuring naked children, that he posed them to focus on

their genitals and buttocks, and that he touched their genitals and buttocks to further expose those

areas on the videos.  Further the evidence showed that petitioner retained theses videos, and that the

videos were interspersed with scenes of petitioner performing autoerotic acts.  These facts support

a finding that the touching in the videos was done for the purpose of sexual arousal or gratification.

Accordingly, to the extent petitioner is attempting to raise a sufficiency of the evidence claim, the

claim is without merit.

J.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides

that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge

issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that

"[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing

of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this

language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not

41

issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

   2.   *Analysis*

   If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained above, the admission of the entirety of the video tapes was proper under state law, because they were relevant to the elements of CSC-II. Thus, the conclusion that petitioner was not denied a fair trial by the introduction of this evidence is not reasonable debatable. Further, in light of the overwhelming evidence against petitioner and the minimally prejudicial nature of the other challenged evidence and the prosecutor's comments, the conclusion that the other evidentiary errors and prosecutorial comments identified by petitioner did not deprive him of a fair trial is not reasonably debatable. And because the resolution of petitioner's evidentiary and prosecutorial misconduct claims is not reasonably debatable, it follows that the resolution of petitioner's related ineffective assistance claims is not reasonably debatable. With respect to petitioner's constitutional challenge to § 768.27a, as explained above it is clear that the statute does not alter the nature or quantum of evidence necessary to convict, and thus does not constitute an ex post facto law. In light of the numerous courts that have upheld similar statutes against ex post facto challenges, the resolution of this claim is not reasonably debatable. Because it is clear that sentencing guideline claims are not cognizable on habeas review and that the *Blakely* rule does not apply to Michigan's indeterminate sentencing scheme, the resolution of petitioner's sentencing claims is not reasonably

42

debatable.  Finally, because they have not been properly exhausted in state court and presented here, and because they are clearly meritless, the resolution of petitioner's possible Fourth Amendment and sufficiency of the evidence claims is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

K.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: May 11, 2012                    s/Paul J. Komives                          
                                       PAUL J. KOMIVES
                                       UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 11, 2012,
electronically and/or U.S. mail.

                                       s/Michael Williams                  
                                       Relief Case Manager for the Honorable
                                       Paul J. Komives